IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNA J. KILLIAN,                          :
                                           :
                    Plaintiff,             :           CIVIL ACTION NO. 16-1377
                                           :
          v.                               :
                                           :
HARTFORD LIFE AND ACCIDENT                 :
INSURANCE COMPANY,                         :
                                           :
                    Defendant.             :

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                      January 31, 2017

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, provides protections for employees participating in their employers' benefits plans. Based upon her diagnosis of breast cancer, the plaintiff employee received short-term disability benefits under her employer's short-term disability plan and, after the expiration of those benefits, long-term disability benefits under the employer's "Staff Long Term Disability Plan." Once the plaintiff's cancer had resolved and her doctor released her to return to work, the claims administrator terminated her benefits. After the claims administrator denied the plaintiff's appeal of the termination of benefits, the plaintiff filed the instant ERISA action against the administrator.

Currently before the court are the parties' cross-motions for summary judgment on the issue of whether the termination of long-term disability benefits was arbitrary and capricious. As explained below, the court finds that there are no genuine issues of material fact and that the claims administrator's decision to terminate the plaintiff's long-term disability benefits was not without reason, unsupported by substantial evidence, or erroneous as a matter of law.

Accordingly, the court will grant the claims administrator's motion for summary judgment and deny the plaintiff employee's motion for summary judgment.

## I.        PROCEDURAL HISTORY

The plaintiff, Donna J. Killian ("Killian"), commenced this ERISA action by filing a complaint in the Lancaster County Court of Common Pleas on February 25, 2016, against the defendant, Hartford Life and Accident Insurance Company ("Hartford").  Notice of Removal at Ex. A, Compl. ("Compl.")   In the complaint, Killian alleged that, pursuant to section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Hartford's decision to terminate her long-term disability ("LTD") benefits and its subsequent denial of her appeal were arbitrary and capricious.  Compl. at 6.  On March 25, 2016, Hartford properly removed the action to this court because Killian's claim arose under ERISA, a federal law.  Notice of Removal at 1-2.  Hartford filed an answer to the complaint on April 1, 2016, Doc. No. 5, and the court held an initial pretrial conference on April 19, 2016.  Doc. No. 6.

After the parties unsuccessfully attempted to settle this matter, Killian filed a motion for summary judgment on August 3, 2016.  Doc. No. 17.  Hartford filed a response in opposition on August 19, 2016.  Doc. No. 23.  Hartford also filed a motion for summary judgment on August 5, 2017, and Killian filed a response in opposition thereto on August 19, 2016.  Doc. Nos. 20, 21.  Presently before the court are those cross-motions for summary judgment.

## II.        APPLICABLE RECORD

Killian worked as a healthcare consultant for PricewaterhouseCoopers LLP ("PwC") from May 3, 1999, through January 15, 2015.  Def. Hartford Life and Accident Ins. Co.'s Statement of Facts in Supp. of its Mot. for Summ. J. ("Def.'s Facts") at ¶ 1, Doc. No. 20-4; Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") at ¶ 1, Doc. No. 22.  As a healthcare consultant, Killian's job required traveling between 80% and 100% of the workweek.  Pl.'s

Statement of Material Facts ("Pl.'s Facts") at ¶ 23, Doc. No. 19; Def. Hartford Life and Accident

Ins. Co.'s Resp. to Pl.'s Statement of Material Facts ("Def.'s Resp.") at ¶ 23, Doc. No. 24;

Administrative Record ("Admin. R.") at HLAIC 00302, HLAIC 00351; *see also* Def.'s Facts at ¶

9; Pl.'s Resp. at ¶ 9.

### A.      The Applicable Plan Provisions

As a former PwC employee, Killian was potentially eligible to receive LTD benefits

through a group employee welfare benefit plan (the "Plan") sponsored by PwC.  Def.'s Facts at ¶

2; Pl.'s Resp. at ¶ 2.  Hartford issued an insurance policy (the "Policy") that funds the benefits

payable under the Plan.  Def.'s Facts at ¶ 3; Pl.'s Resp. at ¶ 3; Admin. R. at POL0001-77.  The

Plan defines "disability" or "disabled" as follows:

> **Disability** or **Disabled** means that during the Elimination Period and for the next
> 60 months You are prevented by:
>
> 1.  accidental bodily injury;
>
> 2.  sickness;
>
> 3.  Mental Illness;
>
> 4.  Substance Abuse; or
>
> 5.  pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as
> a result Your Current Monthly Earnings are no more than 80% of Your Indexed
> Pre-disability Earnings.
>
> After that, You must be so prevented from performing one or more of the
> Essential Duties of Any Occupation.
>
> Your failure to pass a physical examination required to maintain a license to
> perform the duties of Your Occupation does not alone mean that You are
> Disabled.

Def.'s Facts at ¶ 4; Pl.'s Resp. at ¶ 4; Pl.'s Facts at ¶ 3; Def.'s Resp. at ¶ 3; Admin. R. at HLAIC

00187, POL0010.

The Plan grants Hartford authority to determine eligibility for benefits in several places.

For example, the "**ERISA INFORMATION**" section states as follows:

> The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions.  The Policy is incorporated into, and forms part of, the Plan.  The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy.  The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

Admin. R. at POL0053.  The "**Plan Administrator**" section of the ERISA information states:

> The Plan Administrator is PricewaterhouseCoopers LLP. . . . The firm contracts with Hartford Life and Accident Company to insure the Long-Term Disability portion of the Plan.  For purposes of claims administration, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Hartford Life and Accident Company, the Claims Administrator for this program.

Admin R. at POL0055.  Under the "**CLAIM PROCEDURES**" section of the Plan, it states: "The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy.  The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."  Admin. R. at POL0062.  Finally, the Plan states under the "**GENERAL PROVISIONS/CLAIMS**" section:  "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  Admin. R. at POL0039.  The Policy defines "We" as the Hartford Life and Accident Insurance Company.  Admin. R. at POL0015.

With respect to the LTD Plan, there are no wrap documents, and the only plan document is the Hartford Certificate of Insurance.  Pl.'s Facts at ¶ 36; Def.'s Resp. at ¶ 36.

**B.** **Killian's Diagnosis and Award of Short-Term and Long-Term Disability Benefits**

In December 2014, Killian was diagnosed with breast cancer.  Def.'s Facts at ¶ 6; Pl.'s Resp. at ¶ 6; Admin. R. at HLAIC 00374.  Killian ceased work at PwC on January 15, 2015, and she underwent partial mastectomy surgery the following day.  Def.'s Facts at ¶ 7; Pl.'s Resp. at ¶ 7; Pl.'s Facts at ¶ 4; Def.'s Resp. at ¶ 5; Admin. R. at HLAIC 00291, HLAIC 00379-00382.[1]

Beginning in February 2015, Killian underwent cycles of chemotherapy and radiation treatment and, as a result of that treatment, experienced nausea, fatigue, low blood counts (anemia), and some pain.  Def.'s Facts at ¶ 8; Pl.'s Resp. at ¶ 8; Pl.'s Facts at ¶¶ 4, 9; Def.'s Resp. at ¶¶ 5, 10; Admin. R. at HLAIC 00360.  The chemotherapy also increased Killian's risk of infection, and, as a result, her treating oncologist, Christina I. Truica, M.D., restricted her from traveling, which her job required, due to the risk of infection.  Def.'s Facts at ¶ 9; Pl.'s Resp. at ¶ 9; Pl.'s Facts at ¶ 5; Def.'s Resp. at ¶ 6; Admin. R. at HLAIC 00323, HLAIC 00357, HLAIC 00360.

During Killian's appointments with Dr. Truica in April and May of 2015, she complained of fatigue and shortness of breath.  Def.'s Facts at ¶ 10; Pl.'s Resp. at ¶ 10; Admin. R. at HLAIC 00273-00274, HLAIC 00325.  In May 2015, Dr. Truica determined that Killian's symptoms of fatigue and shortness of breath were likely related to anemia.  Def.'s Facts at ¶ 11; Pl.'s Resp. at ¶ 11; Admin. R. at HLAIC 00273.  Dr. Truica also noted that because of Killian's diagnosis of fatty liver disease, she was monitoring her liver function tests, which had been stable.  Def.'s Facts at ¶ 12; Pl.'s Resp. at ¶ 12; Admin. R. at HLAIC 00274.  Dr. Truica's examination of Killian that day was otherwise normal.  Def.'s Facts at ¶ 12; Pl.'s Resp. at ¶ 12; Admin. R. at HLAIC 00273-00274.  Due to Killian's ongoing treatment and presence of symptoms, Dr. Truica

---

[1] Hartford's responses to Killian's statement of facts appear to be off by one number because there is a blank next to Hartford's response to statement of fact number 4.  It is unknown precisely when the numbers are corrected, but Hartford's responses to Killian's statements of facts from numbers 15 forward appear to match.

signed forms in March 2015 and May 2015, in which she opined that Killian was disabled from working at that time.  Def.'s Facts at ¶ 13; Pl.'s Resp. at ¶ 13; Admin. R. at HLAIC 00322-00323, HLAIC 00360.

In office visit notes from Killian's visit on May 29, 2015, Dr. Truica indicated that Killian was hospitalized with sepsis on May 16, 2015, and was discharged on May 20, 2015. Pl.'s Facts at ¶ 6; Def.'s Resp. at ¶ 7; Admin. R. at HLAIC 00215.  In office visit notes from Killian's visit on June 26, 2015, Dr. Truica indicated that Killian was readmitted to the hospital on June 14, 2015 with pancolitis and C. difficile infection and was discharged on June 18, 2015. Pl.'s Facts at ¶ 7; Def.'s Resp. at ¶ 8; Admin. R. at HLAIC 00209.  On June 26, 2015, Dr. Truica diagnosed Killian with grade III thrombocytopenia.  Pl.'s Facts at ¶ 8; Def.'s Resp. at ¶ 8; Admin. R. at HLAIC 00209.

Killian had received short-term disability benefits starting in January 16, 2015, but exhausted those benefits on July 16, 2015.  Pl.'s Facts at ¶ 13; Def.'s Resp. at ¶ 14; Admin. R. at HLAIC 00340.  Hartford approved Killian's claim for LTD benefits effective July 17, 2015. Def.'s Facts at ¶ 14; Pl.'s Resp. at ¶ 14; Pl.'s Facts at ¶¶ 12, 14; Def.'s Resp. at ¶¶ 13, 14; Admin. R. at HLAIC 00020-00024, HLAIC 00340, HLAIC 00343.

### C.    Killian's Condition after the Award of Long Term Disability Benefits

By September 2015, Killian had completed radiation and chemotherapy and the side effects from these treatments tapered off significantly.  Def.'s Facts at ¶ 15; Pl.'s Resp. at ¶ 15; Admin. R. at HLAIC 00291-00292.  Killian's echocardiograms remained status quo and her anemia had resolved.  Def.'s Facts at ¶ 15; Pl.'s Resp. at ¶ 15; Admin. R. at HLAIC 00291-00292.  Nonetheless, Killian continued to complain of nausea and vomiting after the completion of her treatment.  Pl.'s Facts at ¶ 10; Def.'s Resp. at ¶ 11; Admin. R. at HLAIC 00155, HLAIC 00180, HLAIC 00185, HLAIC 00235, HLAIC 00291-00292.

On September 18, 2015, Killian complained about persistent fatigue to Dr. Truica.  Def.'s Facts at ¶ 16; Pl.'s Resp. at ¶ 16; Admin. R. at HLAIC 00292.  Dr. Truica believed it could be related to and residual from the chemotherapy.  Def.'s Facts at ¶ 16; Pl.'s Resp. at ¶ 16; Admin. R. at HLAIC 00292.  Killian also informed Dr. Truica that she developed a side effect of projectile vomiting.  Def.'s Facts at ¶ 16; Pl.'s Resp. at ¶ 16; Pl.'s Facts at ¶¶ 9, 10; Def.'s Resp. at ¶¶ 10, 11; Admin. R. at HLAIC 00291-00292.  To follow up on the vomiting, Dr. Truica recommended an MRI of Killian's brain and a CT scan of her abdomen, both of which were performed and showed no abnormalities other than the fatty liver disease.  Def.'s Facts at ¶ 17; Pl.'s Resp. at ¶ 17; Admin. R. at HLAIC 00279-00282.

On November 9, 2015, Killian complained to Dr. Truica of occasional headaches, vomiting, shortness of breath, and minor right arm and shoulder pain (diagnosed as lymphedema).  Def.'s Facts at ¶ 18; Pl.'s Resp. at ¶ 18; Admin. R. at HLAIC 00185.  Killian was also concerned with her liver function tests and fatty liver disease.  Admin. R. at HLAIC 00185.  Regarding the headaches and vomiting, Dr. Truica "believe[d] that the vomiting and the headaches may be related to migraines and recommended a [n]eurology consult."  Def.'s Facts at ¶ 18; Pl.'s Resp. at ¶ 18; Admin. R. at HLAIC 00185.  Concerning Killian's fatty liver disease, Dr. Truica recommended that she see a hepatologist and referred Killian to a liver specialist.  Def.'s Facts at ¶ 18; Pl.'s Resp. at ¶ 18; Admin. R. at HLAIC 00185.  As for Killian's shortness of breath, Dr. Truica recommended that Killian get an echocardiogram and she noted that Killian was following up with a cardiologist.  Def.'s Facts at ¶ 18; Pl.'s Resp. at ¶ 18; Admin. R. at HLAIC 00185.  Dr. Truica also reported that Killian's breast cancer had resolved as of that time.  Def.'s Facts at ¶ 19; Pl.'s Resp. at ¶ 19; Admin. R. at HLAIC 00185.

On November 25, 2015, Dr. Truica reported that Killian did not have any restrictions or limitations that prevented her from working from an oncological standpoint.  Def.'s Facts at ¶

7

20; Pl.'s Resp. at ¶ 20; Admin. R. at HLAIC 00054, HLAIC 00204.  On December 2, 2015, Dr.

Truica confirmed that Killian did "not have any restrictions or limitations from [her] standpoint."

Def.'s Facts at ¶ 21; Pl.'s Resp. at ¶ 21; Admin. R. at HLAIC 00054, HLAIC 00196.

On November 30, 2015, an occupational therapist, Kathleen A. Beaulieu, evaluated

Killian.  Def.'s Facts at ¶ 23; Pl.'s Resp. at ¶ 23; Admin. R. at HLAIC 00193-00195.  Beaulieu

indicated that Killian's strength was "grossly" within normal limits and that she did not need any

further occupational therapy.  Def.'s Facts at ¶ 23; Pl.'s Resp. at ¶ 23; Admin. R. at HLAIC

00194.  Beaulieu placed Killian on a home exercise program and requested a prescription for a

right arm compressive sleeve "to be used primarily during air travel."  Def.'s Facts at ¶¶ 23, 31;

Pl.'s Resp. at ¶¶ 23, 31; Admin. R. at HLAIC 00194.

On December 1, 2015, Hartford asked Killian whether she had any other treating

physicians with records to support her claim of disability.  Def.'s Facts at ¶ 22; Pl.'s Resp. at ¶

22; Admin. R. at HLAIC 00054, HLAIC 00055.  Killian indicated that aside from Dr. Truica,

there were no additional physicians who could speak to her disability.  Def.'s Facts at ¶ 22; Pl.'s

Resp. at ¶ 22; Admin. R. at HLAIC 00054, HLAIC 00055.

Killian visited Anthony P. Turel, Jr., M.D., a neurologist, on December 3, 2015.  Def.'s

Facts at ¶ 24; Pl.'s Resp. at ¶ 24; Admin. R. at HLAIC 00187-00192.  Dr. Turel examined

Killian, and he indicated that her exam was normal and he did not believe that headaches or any

neurological issues were causing her nausea or vomiting.  Def.'s Facts at ¶ 25; Pl.'s Resp. at ¶

25; Admin. R. at HLAIC 00190.  Rather, he believed that Herceptin, a medication known to

cause such symptoms in patients with breast cancer, was possibly causing the nausea and

vomiting.  Def.'s Facts at ¶ 25; Pl.'s Resp. at ¶ 25; Pl.'s Facts at ¶ 11; Def.'s Resp. at ¶ 12;

Admin. R. at HLAIC 00190.  Dr. Turel did not order a cerebral spinal fluid examination, and he

noted that Killian was scheduled to stop taking Herceptin in the next few weeks.  Def.'s Facts at

¶ 25; Pl.'s Resp. at ¶ 25; Admin. R. at HLAIC 00190.  Dr. Turel also did not require any further follow-up with neurology; instead, he "return[ed] her for follow-up in the department of oncology."  Def.'s Facts at ¶ 25; Pl.'s Resp. at ¶ 25; Admin. R. at HLAIC 00191.

In his notes from that December 3, 2015 visit, Dr. Turel did not indicate that he believed Killian was disabled by any of her symptoms.  Def.'s Facts at ¶ 26; Pl.'s Resp. at ¶ 26; Admin. R. at HLAIC 00187-00191.  Dr. Turel did note that Killian had shortness of breath, which a cardiologist evaluated.  Def.'s Facts at ¶ 27; Pl.'s Resp. at ¶ 27; Admin. R. at HLAIC 00188. The cardiologist "initially said that she had left ventricular cardiomyopathy[, but a s]ubsequent cardiologist has repeated an ultrasound and said that he did not find any significant abnormalities present and no signs of hypertrophy."  Def.'s Facts at ¶ 27; Pl.'s Resp. at ¶ 27; Admin. R. at HLAIC 00188.

### D.   The Termination of Benefits and Killian's Appeal

Hartford terminated Killian's LTD benefits effective November 25, 2015.  Def.'s Facts at ¶ 28; Pl.'s Resp. at ¶ 28; Pl.'s Facts at ¶ 15; Def.'s Resp. at ¶ 15; Admin. R. at HLAIC 00013-00014.   In the termination letter, dated December 10, 2015, Hartford stated that it was terminating the LTD benefits because it had been "recently notified that [she was] released to return to work full time at [her] occupation with no restrictions as of 11/25/2015."  Admin. R. at HLAIC 00013.

Killian appealed from Hartford's termination of LTD benefits by letter dated December 17, 2015.  Def.'s Facts at ¶ 29; Pl.'s Resp. at ¶ 29; Pl.'s Facts at ¶ 17; Def.'s Resp. at ¶ 17; Admin. R. at HLAIC 00180.  In this letter, Killian stated as follows:

> As I mentioned to you on the telephone when you informed me on 12/10/15, I was quite surprised by Dr. Truica's form as I had seen her earlier that month and she was making arrangements for me to see a neurologist, an occupational therapist, a gastroenterologist/hepatologist, and have additional bloodwork along with a heart echography.

I continue to have vomiting episodes multiple times per week, which is why she is investigating my condition further. My liver bloodwork numbers have continued to rise so I found out only today when I spoke to her Nurse Coordinator, Monica that Dr. Truica wants a CT scan of my liver which is scheduled for 12/18/2015. I am also still under treatment with Herceptin infusions continuing through February, 2016.

Based on the above information and the additional information you have received from my oncologist, I don't believe I am healthy enough or able to return to work at this time. I am hereby requesting that my LTD benefits be reinstated until a time where we can get a handle on what's wrong with me and why I continue with these complications of my treatment.

Pl.'s Facts at ¶ 18; Def.'s Resp. at ¶ 18; Admin. R. at HLAIC 00180.

In support of the appeal, Killian submitted a physical capacity evaluation ("PCE") that Dr. Truica completed and dated December 16, 2015. Pl.'s Facts at ¶ 19; Def.'s Resp. at ¶ 19; Admin. R. at HLAIC 00184. In the PCE, Dr. Truica opined about any restrictions or limitations on Killian's functionality by indicating that during an eight-hour period, Killian could sit, stand, and walk intermittently for four hours at one time with standard breaks. Admin. R. at HLAIC 00184. For the "medical findings/rationale" in support of these opinions, Dr. Truica stated that Killian "continues to have intermittent nausea, vomiting and headaches with undetermined source/etiology – symptoms variable and unpredictable." Pl.'s Facts at ¶ 20; Def.'s Resp. at ¶ 20; Admin. R. at HLAIC 00184. Dr. Truica noted that Killian should "never" fly, and supported that restriction by stating that she "[n]eeds to receive pressure sleeve for Rt. Arm lymphedema." Pl.'s Facts at ¶ 22; Def.'s Resp. at ¶ 22; Admin. R. at HLAIC 00184. Dr. Truica stated that she would reassess these restrictions and limitations on December 30, 2015. Admin. R. at HLAIC 00184. Under the additional comments section of the PCE, Dr. Truica stated: "In addition, liver function tests have increased prompting need for CT scan of abdomen currently scheduled for 12/18/15." *Id.*

During Hartford's review of Killian's appeal, it requested an independent medical record review from Medical Consultants Network.  Admin. R. at HLAIC 00004.  Zanhua Yi, M.D., a Board-certified oncologist, conducted the review on January 8, 2016.  Def.'s Facts at ¶ 32; Pl.'s Resp. at ¶ 32; Pl.'s Facts at ¶¶ 24, 26; Def.'s Resp. at ¶¶ 24, 26; Admin. R. at HLAIC 00005, HLAIC 00161-00167.  Dr. Yi reviewed Killian's claim file and concluded:

> From an oncology point of view, there are no limitations from November 25, 2015.  From an oncology point of view she should be able to sustain full time work schedule as of November 25, 2015 through the present time because from an oncology point of view she has no cancer.  She is not receiving any cytotoxic chemotherapy.  She is receiving Herceptin which is an antibody.  She should not limit her physical activities.

Def.'s Facts at ¶ 33; Pl.'s Resp. at ¶ 33; Pl's Facts at ¶ 28; Def.'s Resp. at ¶ 28; Admin. R. at HLAIC 00164.

Dr. Yi noted that although Killian had some mild right arm lymphedema, "it appeared to be very mild because she ha[d] a full range of motion."  Def.'s Facts at ¶ 34; Pl.'s Resp. at ¶ 34; Admin. R. at HLAIC 00164.  Dr. Yi did not believe that the lymphedema limited Killian in her activities because "it [did] not appear that she ha[d] any limitations in range of motion during the occupational assessment."  Def.'s Facts at ¶ 34; Pl.'s Resp. at ¶ 34; Admin. R. at HLAIC 00164.

Dr. Yi also pointed out that Killian was being treated for (1) unexplained nausea and vomiting two to three times per week, (2) fatty liver, and (3) shortness of breath without clear etiology.  Def.'s Facts at ¶ 35; Pl.'s Resp. at ¶ 35; Admin. R. at HLAIC 00164.  Dr. Yi deferred the nausea, vomiting, and fatty liver issues to a neurologist and gastroenterologist, and the shortness of breath issue to a cardiologist.  Def.'s Facts at ¶ 35; Pl.'s Resp. at ¶ 35; Pl.'s Facts at ¶ 27; Def.'s Resp. at ¶ 27; Admin. R. at HLAIC 00164.  Dr. Yi noted that other than the nausea, which Killian's neurologist believed was caused by the Herceptin, Killian had no other

documented side effects from her medications.  Def.'s Facts at ¶ 36; Pl.'s Resp. at ¶ 36; Pl.'s Facts at ¶ 27; Def.'s Resp. at ¶ 27; Admin. R. at HLAIC 00165.

Hartford conducted a detailed review of Killian's treatment records for the purposes of addressing her appeal.  Def.'s Facts at ¶ 37; Pl.'s Resp. at ¶ 37; Admin. R. at HLAIC 00003, HLAIC 00165.  Regarding Killian's fatty liver, this condition apparently pre-existed her cancer treatment, and she never saw a specialist to treat it.  Def.'s Facts at ¶ 40; Pl.'s Resp. at ¶ 40; Admin. R. at HLAIC 00185.  Killian had no documented side effects from her fatty liver disease. Def.'s Facts at ¶ 41; Pl.'s Resp. at ¶ 41.  At the time of her appeal, Killian had not seen a gastroenterologist.  *See* Admin. R. at HLAIC 00054, HLAIC 00055.

### E.      Hartford's Decision on Appeal

Hartford sent a letter dated January 13, 2016, to Killian advising her that, based on an independent review of her claim on appeal, she was entitled to an additional five days of LTD benefits, but the benefits were terminated thereafter.  Def.'s Facts at ¶ 43; Pl.'s Resp. at ¶ 43; Admin. R. at HLAIC 00003-00006.  After addressing some of the information in Killian's claim file, including her medical records and Dr. Yi's report, Hartford supported its decision by explaining as follows:

> To remain eligible for benefits, the medical evidence must show that you were unable to perform one or more of the Essential Duties of Your Occupation. Additionally, the LTD Plan governing your claim defines Your Occupation as it is recognized in the general workplace and does not mean the specific job You are performing for a specific employer or at a specific location.  Accordingly, an occupational analysis report was completed, comparing the essential duties and corresponding physical demands, environmental conditions, and non-exertional requirements of your occupation as performed for your Employer (PWC) vs. your occupation as performed in the national economy (general workplace).  The report confirmed that the essential duties were equal in terms of consulting with client to define need or problem, conducts studies and surveys to obtain data, and analyzes data to advise on or recommend solution, utilizing knowledge of theory, principles, or technology of specific discipline or field of specialization.  It was also determined that in the national economy, it is reasonable that the occupation would require travel.

Given your medical history and the presence of mild lymphedema of your right upper extremity, it is reasonable that you required an occupational therapy evaluation and would require the use of a compression band/ garment for your right upper extremity prior to any air travel.  However, the oncology physician restriction of all air travel as of 12/16/15 is not supported as you had completed the occupational therapy evaluation on 11/30/15 and were provided a prescription for a compression sleeve on that date.  In addition, the independent oncology reviewer provided that your lymphedema was mild and would not require restriction or limitation to your activity from 11/25/15 or beyond.  The oncology physician restriction for no lifting or carrying is also not supported beyond 11/30/15 as you had completed the neurology and occupational therapy evaluations with no examination abnormalities and the independent oncology reviewing physician opined that you would not require restriction or limitation to your ability to perform lifting or carrying activities.  Based on the weight of the evidence contained in the claim file, you would have met the definition of Disability for the period of 11/25/15 through 11/30/15 as it was reasonably medically necessary for you to have a compression band / garment for your right upper extremity prior to participating in any air travel, which your occupation requires (for your Employer and in the National Economy).  However, as of 12/01/15 and beyond, the medical evidence does not support continuing limitation in function and you would not meet the definition of Disabled applicable to your claim and benefits beyond 11/30/15 are not payable.

Def.'s Facts at ¶ 44; Pl.'s Resp. at ¶ 44; Admin. R. at HLAIC 00006.  In claim notes, Hartford's

appeals specialist pointed out that

Dr. Yi noted [Killian] was seen by a Neurologist and GI for other issues such as unexplained nausea and vomiting 2-3 times per week and also fatty liver and that she would defer these problems to neurologist and a gastroenterologist.  It also notes [Killian] with some shortness of breath without clear etiology, followed by cardiology and defers to a cardiologist.

Admin. R. at HLAIC 00040.  The appeals specialist eventually concluded that

The oncology IMO physician opined that the claimant was cancer free and stable from an oncology standpoint with no applicable R&Ls from 11/25/15 to the present time.  The IMO physician noted deferring comment on the claimants c/o shortness of breath, headaches, nausea and vomiting to cardiac, neurology and GI specialist respectively.  The claimants [sic] oncology physician is the only medical provider certifying restrictions or limitations.  The occupational analysis on file (HIG RCM) has confirmed the claimant Own Occ / NE as Sedentary and would likely require travel as well.  Accordingly, the oncology provider R&Ls for no air travel were addressed.

Admin. R. at HLAIC 00042.

13

## II.      DISCUSSION

### A.      Standards of Review

### 1.      Summary Judgment Standard

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of

14

evidence" for elements on which the non-movant bears the burden of production.  *Anderson,* 477

U.S. 242, 252 (1986).  Bare assertions, conclusory allegations, or suspicions are insufficient to

defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.

1982) (indicating that a party opposing a motion for summary judgment may not "rely merely

upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for

M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations"

do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of

material fact exists and that a reasonable factfinder could rule in its favor").  Additionally, the

non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and

provide some evidence that would show that there exists a genuine issue for trial." *Jones v.

United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Moreover, arguments made in briefs "are

not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary

judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-

10 (3d Cir. 1985).

The court "may not weigh the evidence or make credibility determinations."  *Boyle v.

County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermarkets., Inc.

v. Darling–Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).  Instead, "[w]hen considering

whether there exist genuine issues of material fact, the court is required to examine the evidence

of record in the light most favorable to the party opposing summary judgment, and resolve all

reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007).

The court must decide "not whether . . . the evidence unmistakably favors one side or the other

but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."

*Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should

grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).

### 2.      Standard of Review for Benefit Denials under ERISA

Killian has brought this action under section 502(a)(1)(B) of ERISA, which permits a participant or beneficiary of a covered policy to bring a civil action to recover the benefits due under the terms of the policy. 29 U.S.C. § 1132(a)(1)(B). Generally, the court must review the denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations," the court must review its decision "under an abuse-of-discretion (or arbitrary and capricious) standard." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citations omitted).[2]

Here, the parties dispute the appropriate standard of review that the court should apply in this case. Killian contends that *de novo* review is appropriate because while the Plan administrator, PwC, may have delegated decision-making authority to Hartford, the Plan contains no provision *allowing* PwC to delegate such authority to Hartford. Brief in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Brief") at 5-8, Doc. No. 18. Hartford contends that the Plan and PwC specifically and sufficiently delegated discretionary authority to Hartford to act as the claims administrator, thus warranting deferential review. Def. Hartford Life and Accident Ins. Co.'s Resp. Brief in Opp. to Pl.'s Mot. for Summ. J. at 3-7, Doc. No. 23.

The court is aware of no law in this or any other circuit suggesting that for the arbitrary and capricious standard to apply, a benefits plan must contain both a provision delegating

---

[2] The abuse-of-discretion standard and the arbitrary and capricious standard are used "interchangeably" in ERISA cases. *Viera*, 642 F.3d at 413.

decision-making authority and a separate provision allowing the employer to delegate that authority.  In determining the standard of review in this case, the question is whether the Plan language vested Hartford with discretionary authority to determine employees' eligibility for benefits.  *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1256 (3d Cir. 1993) ("We recognize that under *Firestone*, [498 U.S. at 115,] the question whether discretion is granted turns on the Plan . . . .").  This is not a case in which a plan's terms are ambiguous, or merely implicitly grant the administrator discretion to determine eligibility.  As described above, the Plan *explicitly* grants Hartford such authority in at least four different provisions.  *See, e.g.*, Admin. R. at POL0053 ("The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."); *id.* at POL0055 ("For purposes of claims administration, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Hartford Life and Accident Company."); *id.* at POL0062 ("The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."); *id.* at POL0015, POL0039 ("We [Hartford] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.").  Further, other courts have concluded that the same or similar policy language warranted arbitrary and capricious review regardless of the absence of a wrap document or a separate provision giving the employer power to delegate authority to determine eligibility.  *See, e.g.*, *Baker v. Hartford Life & Acc. Ins. Co.*, No. 4:14-CV-209-BLW, 2015 WL 769962, at *3 (D. Idaho Feb. 23, 2015); *Minutello v. Hartford Life & Acc. Ins. Co.*, 964 F. Supp. 2d 491, 502 (W.D. Pa. 2013); *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 334 (E.D.N.Y. 2013); *Aquilino v. Hartford Life & Acc. Ins. Co.*, No. CIV. A. 10-2044, 2010 WL 3505172, at *2 (E.D. Pa. Aug. 31, 2010).

Thus, Killian's argument is insufficient to raise a genuine issue of material fact as to Hartford's discretionary authority to make benefits determinations, and the appropriate standard of review is the arbitrary and capricious standard.  Under this standard, "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fleisher v. Standard Ins. Co.,* 679 F.3d 116, 121 (3d Cir. 2012) (citations and internal quotation marks omitted).  "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000).  When reviewing an administrator's decision, the court considers only the "evidence that was before the administrator when he made the decision being reviewed."  *Fleisher*, 679 F.3d at 121 (citation omitted).

The arbitrary and capricious standard of review "is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (internal quotation omitted).  Although "the arbitrary and capricious standard is extremely deferential, [i]t is not ... without some teeth. Deferential review is not no review, and deference need not be abject." *Kuntz v. Hartford Inc.*, No. 10-CV-00877, 2013 WL 2147945, at *4 (E.D. Pa. May 17, 2013) (citations and internal quotation marks omitted).

In addition to determining whether the administrator's decision was supported by substantial record evidence, the court must "review various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded, to determine if the conclusion was arbitrary and capricious." *Miller v. American Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).  Such procedural and structural concerns do not alter the court's standard of review; rather, the court should consider

18

procedural and structural irregularities "as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009) (citations omitted). "'[T]he procedural inquiry focuses on how the administrator treated the particular claimant,'" and "'whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality.'" *Miller*, 632 F.3d at 845 (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162, 165 (3d Cir. 2007), *abrogated on other grounds by Schwing*, 562 F.3d 522).[3]  "The structural inquiry focuses on the financial incentives created by the way the plan is organized," *Post*, 501 F.3d at 162, such as a conflict of interest arising from "an administrator's dual role of both evaluating and paying benefits claims." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

## B.     Analysis

Because the court is reviewing cross-motions for summary judgment, the court will briefly summarize the parties' contentions.  In her motion for summary judgment, Killian contends that Hartford's decision to terminate her benefits was arbitrary and capricious, citing both structural and procedural concerns.  Structurally, Killian contends that Hartford faced a conflict of interest due to its dual role as both the evaluator and payor of claims under the Plan. Pl.'s Brief at 9.  Procedurally, Killian contends that Hartford did not act as a neutral

---

[3] In *Post*, the Third Circuit identified the following "illustrative, not exhaustive, list of [procedural irregularities]: (1) reversal of position without additional medical evidence; (2) self-serving selectivity in the use and interpretation of physicians' reports; (3) disregarding staff recommendations that benefits be awarded; and (4) requesting a medical examination when all of the evidence indicates disability[.]"  501 F.3d at 165 (citations omitted).  Some other examples of

> [p]rocedural anomalies that call into question the fairness of the process and suggest arbitrariness include: relying on the opinions of non-treating over treating physicians without reason; failing to follow a plan's notification provisions; . . . relying on favorable parts while discarding unfavorable parts in a medical report; [and] denying benefits based on inadequate information and lax investigatory procedures.

*Morgan v. The Prudential Ins. Co. of Am.*, 755 F. Supp. 2d 639, 643 (E.D. Pa. 2010) (citations omitted).

administrator because it (1) engaged in a selective reading of her medical records, and (2) failed to request an independent medical examination ("IME").  *Id.* at 12, 15.

In Hartford's motion for summary judgment, it generally contends that its decision to terminate Killian's LTD benefits was not arbitrary or capricious because substantial evidence in the record supported the decision.  Specifically, Hartford contends that (1) the record evidence overwhelmingly supports its benefits determination, and (2) its review process was fair.  Def. Hartford Life and Accident Ins. Co.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 12, 15, Doc. No. 20-2.

Although cross-motions for summary judgment are before the court, the court will address those arguments presented in Killian's motion as consideration of those arguments will also encompass the entirety of Hartford's arguments in support of its motion for summary judgment.  As explained below, the court finds that there are no genuine issues of material fact as to whether Hartford acted arbitrarily and capriciously in terminating Killian's LTD benefits, and, thus, Hartford's decision was reasonable given the evidence in the administrative record.

### 1.    Killian's Claim of a Structural Conflict of Interest

Killian first contends that a structural conflict of interest—namely, the fact that Hartford both funds the Plan and evaluates claims—interfered with Hartford's ability to conduct a neutral review of her claim.  Pl.'s Brief at 9.  This dual role certainly creates a conflict of interest that the court must weigh in determining whether Hartford's decision was arbitrary and capricious. *Glenn*, 554 U.S. at 112 (holding that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims" creates a conflict of interest that the court must weigh as a factor in determining whether a claims administrator abused its discretion).  Such a conflict is of great importance where the "circumstances suggest a higher likelihood that it affected the benefits decision."  *Id.* at 117.  In *Reed v. CITIGROUP INC*, 658 F. App'x 112, 114 (3d Cir.

2016), for example, the plaintiff pointed to temporal proximity between the administrator denying his claim and becoming aware that it had been underpaying the claim by approximately $10,000 per month. The Third Circuit held that this constituted sufficient record evidence to raise an inference that the administrator had made its decision based on monetary concerns.  *Id.*

In this case, Killian merely states the fact that Hartford both pays and evaluates claims without pointing to any record evidence that might raise a reasonable inference that Hartford based its decision to terminate her benefits on financial concerns rather than on its conclusion that she was no longer disabled under the Plan's terms.  Pl.'s Brief at 9.  To the contrary, the record shows that Hartford heavily relied on Killian's own treating physician's opinion in making its determination, and asked Killian whether she had any other treating physicians who could support her claim of disability.  Admin. R. at HLAIC 00054, HLAIC 00055.  In deciding her appeal, Hartford also requested an additional peer review of the evidence.  *Id.* at HLAIC 00161-00167.  Nothing in the record suggests that Hartford's decision was based on an inability or unwillingness to pay Killian's claims.  Thus, Hartford's structural conflict of interest is not entitled to great weight in determining whether its decision was arbitrary and capricious.

### 2.     Killian's Claims of Procedural Irregularities

Killian also argues that various procedural irregularities in the record suggest that Hartford's decision to deny her LTD benefits was arbitrary and capricious.

### a.     Hartford's Alleged Selective Review of the Record

Killian's first claim of procedural irregularity is that Hartford selectively relied upon portions of the record in terminating her benefits, suggesting bias in favor of termination. Specifically, she contends that Hartford accepted Dr. Truica's diagnosis but ignored the limitations related to that diagnosis, and rejected the limitations in Dr. Truica's PCE with no contradictory evidence.  Pl.'s Brief at 12-14.  Killian also suggests that Dr. Yi's report was self-

serving because it did not address the restrictions associated with her nausea and vomiting, instead deferring those issues to a gastroenterologist.  *Id.* at 13.

The court need not address whether these procedural issues render Hartford's decision arbitrary and capricious because the record evidence does not support Killian's contention that Hartford ignored or rejected Dr. Truica's opinion.  This contention seems to stem from the parties' dispute over whether Dr. Truica opined in her PCE that Killian could never fly (as Killian argues), or that Killian could never fly *without a pressure sleeve* (as Hartford argues).  The fact that Killian *argues* that Dr. Truica indicated that she could never fly does not make this a disputed issue of material fact precluding summary judgment in favor of Hartford—the report itself plainly supports the opposite conclusion.  In the PCE dated December 16, 2015, Dr. Truica was asked to address the restrictions and limitations impacting Killian's functionality.  Admin. R. at HLAIC 00184.  Dr. Truica listed flying under "other restrictions," and checked the "never" box under "activity ability."  *Id.*  When asked to indicate the support for that restriction, in the same row as where she wrote in the flying restriction, Dr. Truica wrote: "Needs to receive pressure sleeve for Rt. Arm lymphedema."  *Id.*

The note about the pressure sleeve cannot be interpreted as a separate limitation wholly apart from the limitation on flying.  Dr. Truica wrote this note in the column asking for support for the restriction next to the flying restriction.  If this were a separate limitation, rather than a qualifier to the checked "never" box next to the flying restriction, Dr. Truica would have written it in under "other restrictions," or even under the "additional comments" section.  There is no intuitive way to interpret the note except as a qualifier to the flying restriction.[4]

---

[4] The occupational therapist's evaluation also supports this interpretation.  In the evaluation, the therapist notes that an "[e]-message was sent to her doctor requesting prescription for a right UE compressive garment *to be used primarily during air travel.*"  Admin. R. at HLAIC 00194 (emphasis added).  Thus, it was reasonable for Hartford to interpret Dr. Truica's note about the pressure sleeve as an independent limitation, rather than a qualifier to her flying restriction.

Thus, Hartford did not, in fact, reject Dr. Truica's reported limitations.  To the contrary, Hartford cited Dr. Truica's PCE as *support* for its decision to terminate Killian's benefits.[5] Based on Dr. Truica's PCE, Hartford concluded that Killian's need for a pressure sleeve limited her ability to fly, which was an essential duty of her occupation.  Admin. R. at HLAIC 00005. Because Killian's occupational therapist eventually requested the pressure sleeve, and Killian received it by November 30, 2015, Hartford concluded that Killian was no longer disabled because she had what she needed to fly without limitation.  *Id.*  Hartford's conclusion was also supported by Dr. Truica's statements on two other occasions that Killian no longer had any limitations: Dr. Truica opined that Killian had no restrictions on November 25, 2015, Admin. R. at HLAIC 00204, and confirmed this opinion on December 2, 2015.  Admin. R. at HLAIC 00196.

Further, as to Dr. Yi's report, even if Killian has raised an issue of fact as to whether it was arbitrary and capricious to rely on that report because Dr. Yi only conducted a paper review and did not address her nausea and vomiting, that issue is immaterial.  Dr. Yi's report is wholly consistent with Dr. Truica's PCE.  Both doctors concluded that Killian was not limited in any way from an oncologist's point of view.  The only material difference between the two opinions

---

[5] Killian contends that Hartford's present reliance on Dr. Truica's opinion that she could perform full-time work is a *post hoc* rationale, and that Hartford did not actually deny Killian's appeal because of Dr. Truica's PCE.  Pl.'s Brief in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") at 9, Doc. No. 21.  While the court agrees that an administrator may not offer *post hoc* justifications for denying a claim or appeal, the record shows that Hartford's reliance on Dr. Truica is not *post hoc*.  In the letter denying Killian's appeal beyond November 20, 2015, Hartford stated that the medical evidence it reviewed included "confirmation from your oncology physician," Dr. Truica's PCE, and medical records from Dr. Truica's office.  Admin. R. at HLAIC 00004-00005.

Killian also argues that the claims examiner rejected Dr. Truica's limitation on air travel as not supported by the medical records.  Pl.'s Opp. at 8.  This assertion is not supported by the record.  On January 14, 2016, the examiner, Trisha L. Shepardson (Killian misidentified the relevant examiner as Mary Roman in her brief), stated: "it is reasonable the claimant required . . . the use of a compression band/ garment for her RUE prior to any air travel." Admin. R. at HLAIC 00037.  This is consistent with Dr. Truica's PCE.  Shepardson also stated that the restriction of *all* air travel was unsupported because Killian "was provided a prescription for a compression sleeve."  *Id.*  This is also consistent with Dr. Truica's PCE.  Further, in Hartford's letter denying her appeal, it recognized that Hartford's decision to terminate benefits before she received the compression sleeve was improper because she was still disabled without it.  Admin. R. at HLAIC 00005-00006.  Thus, the claims evaluator did not reject Dr. Truica's PCE, but rather based her analysis of Killian's claim on it.

is that Dr. Truica addressed Killian's nausea and vomiting, and Dr. Yi did not.  The fact that Dr. Truica's PCE was broader than Dr. Yi's does not render their opinions inconsistent.  Thus, Hartford did not reject Dr. Truica's opinion and instead accord special weight to Dr. Yi's opinion.  Similarly, Hartford did not need to rely on, or obtain, Dr. Yi's opinion to come to its conclusion.  Dr. Truica, Killian's own treating oncologist, opined that Killian no longer had any limitations aside from requiring a compression sleeve in order to fly.

While the court is sympathetic to the presumed difficulty of traveling while one is faced with unpredictable spells of projectile vomiting, it is not within the court's discretion to conclude that this renders Killian unable to perform the functions of her job when her own treating oncologist found otherwise.[6]  Hartford relied on the opinions of Dr. Truica and Dr. Yin, which were consistent, to conclude that Killian was no longer disabled.  Hartford's use of those opinions cannot support an inference that it evaluated the evidence in a self-serving manner because Killian has failed to point to any record evidence that Hartford ignored or rejected.  No health care provider suggested that any condition from which Killian was suffering at the time Hartford terminated her LTD benefits precluded her from working.[7]  Thus, not only does this

---

[6] Killian seems to ask the court to do just this in her brief opposing Hartford's motion for summary judgment.  She argues that:  "Hartford's argument is a red herring.  If someone became blind would Hartford require medical evidence to establish that the claimant could not be a truck driver?  If a lawyer lost the ability to speak would Hartford require medical evidence to establish that claimant could not be a trial lawyer?"  Pl.'s Opp. at 10.  The answer to these rhetorical questions is, in fact, yes—under the Policy, the burden is on the claimant to provide Hartford with satisfactory evidence of disability, even if the alleged disability seems obvious. *See, e.g.,* Admin R. at POL0026 (requiring that the claimant provide satisfactory proof of loss in order to receive benefits); POL0035 ("Proof of Loss may include but is not limited to the following: 1. documentation of: a) the date Your Disability began; b) the cause of Your Disability; c) the prognosis of Your Disability; . . . 2. any and all medical information, including . . . histories, physical, mental or diagnostic examinations and treatment notes . . . . All proof submitted must be satisfactory to [Hartford].").  And a court may not substitute its judgment for that of a medical professional.  Killian's own doctor opined that she could perform the essential duties of her job, and the court declines to discount that opinion without a legally sufficient reason to do so.

[7] Importantly, Hartford did not question whether Killian actually suffered from nausea and vomiting.  It instead concluded that, based on the medical evidence that Killian provided, those conditions did not render her disabled because they did not preclude her from performing the essential duties of her job.  *See* Admin. R. at HLAIC 00006, HLAIC 00013.

24

procedural irregularity not weigh in favor of a finding that Hartford's decision was arbitrary and capricious, but, factually, there was no irregularity.

                 b.     <u>Hartford's Failure to Order an Independent Medical Examination</u>

       Killian's second claim of procedural irregularity is that Hartford failed to obtain an independent medical examination ("IME") to determine the severity and frequency of her nausea, which restricted its ability to reject contrary medical evidence.  Pl.'s Brief at 15-16.  As an initial matter, the court again notes that it is unclear what evidence Killian suggests Hartford rejected—Hartford relied on Killian's own treating oncologist.  There is no evidence in the record suggesting that Hartford gave Dr. Yi's report greater weight than Dr. Truica's opinions.

       Regarding the failure to order an IME,  "numerous courts in [the Third C]ircuit have held that there is no legal requirement for a plan administrator to demand an independent medical examination as part of its review of a claim for disability benefits under an ERISA-governed plan, even if the plan permits it to do so."  *Sollon v. Ohio Cas. Ins. Co.*, 396 F. Supp. 2d 560, 586 (W.D. Pa. 2005) (discussing cases).  Despite this lack of a legal requirement, other courts have concluded that "a decision to forego an IME and conduct only a paper review, while not rendering a denial of benefits arbitrary *per se*, is another factor to consider in the Court's overall assessment of the reasonableness of the administrator's decision-making process."  *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F. Supp. 2d 546, 563 (W.D. Pa. 2009).

       In this case, however, the court does not find that the failure to obtain an IME weighs in favor of a determination that Hartford's termination of benefits was arbitrary and capricious.  Hartford did not forego an IME in favor of only a paper review—Hartford relied on Dr. Yi's paper review *and* Dr. Truica, Killian's treating physician who examined her *in person* on multiple occasions.  And, once again, it does not appear from the record that Hartford disagreed with or disputed Dr. Truica's diagnosis or noted limitations.  If other objective evidence existed

that would suggest that Killian was, in fact, still unable to perform her job duties, it was Killian's obligation to provide such evidence to Hartford under the Policy. *See, e.g.,* Admin R. at POL0026 (requiring that the claimant provide satisfactory proof of loss to receive benefits); *id.* at POL0035 ("Proof of Loss may include but is not limited to the following: 1. documentation of: a) the date Your Disability began; b) the cause of Your Disability; c) the prognosis of Your Disability; . . . 2. any and all medical information, including . . . histories, physical, mental or diagnostic examinations and treatment notes . . . . All proof submitted must be satisfactory to [Hartford]."); *id.* at PWC0011 ("It is very important that you and your physician complete the form(s) and return all requested information, including written Proof of Loss, to Hartford Life in a timely manner . . . .").[8]  Hartford asked Killian if she had any other evidence to supplement the record before it decided her appeal, and she stated that she did not.  Admin. R. at HLAIC 00055. Therefore, Hartford's discretionary decision not to order an IME is not a factor that weighs in favor of finding that it acted in arbitrarily and capriciously.

### III.   CONCLUSION

The court's review of the administrative record in this case shows that there are no genuine issues of material fact that would preclude the court from determining that Killian has not met her burden to establish that Hartford's termination of her LTD benefits was arbitrary and capricious.  The administrative record simply does not contain any evidence that Hartford was biased in reviewing Killian's claim—either on a structural or procedural level.  Hartford relied on all of the objective record evidence without specifically rejecting any one piece of record

---

[8]Along the same lines, Killian takes issue with the fact that Hartford did not consult a gastroenterologist even though Dr. Yi deferred her nausea and vomiting issues to such a specialist.  Pl.'s Brief. at 13.  Again, however, the burden was on Killian to provide evidence of her disability.  Thus, Hartford had no duty to follow up on Dr. Yi's evaluation by obtaining an evaluation by an independent gastroenterologist.

The court also reiterates that it may only consider the administrative record.  Killian has indicated in her brief and at oral argument that she obtained a gastrological evaluation after Hartford decided her appeal.  Even if that evaluation suggests that she is disabled, the court is powerless to consider it.  *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012).

evidence.  Further, no piece of evidence was inconsistent with any other evidence.  Thus, the court's overall assessment of Hartford's conduct in this case demonstrates that there are no genuine issues of material fact that it acted in an arbitrary and capricious manner in terminating Killian's LTD benefits after November 30, 2015.  Accordingly, the court will deny Killian's motion for summary judgment and grant Hartford's motion for summary judgment.

An appropriate order follows, which the court will docket separately.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.